# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DEAN CERO,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br><br>　　　　　Defendant. | 2:09-cv-02086-PMP-LRL<br><br>**MOTION FOR REVERSAL AND/OR REMAND (#11)** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's Motion for Reversal and/or Remand (#11). Also before the court is defendant's Cross-Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Reversal of the Commissioner's Decision (#16). No reply was filed.

## BACKGROUND

Plaintiff, Dean Cero ("Cero"), seeks judicial review of the final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Cero applied for DIB on July 7, 2005 alleging that he had been disabled and unable to work since February 1, 2001 due to Parkinson's disease. (AR 60; 69; 88-92). His application was denied initially, and again upon administrative reconsideration. (AR 60-62). On October 30, 2006, Cero timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 59). ALJ Michael B. Kennett conducted a hearing on July 10, 2007 in Las Vegas, Nevada. (AR 37-56). Cero was represented by an attorney at the hearing, at which both Cero and a vocational expert testified. On August 3, 2007, the ALJ concluded that Cero was not disabled through his date of last insured, September 30, 2002, and therefore was not eligible for DIB. (AR 35). He specifically noted that "the main impairment upon which the claimant relies to establish his case for disability [Parkinson's disease]

was not diagnosed until after his date of last insured, September 30, 2002, and the impairments he had before that date, although they lasted the requisite duration, were not disabling within the meaning of the Social Security Act." (AR 31). The Appeals Council denied Cero's request for review of the ALJ's decision on August 27, 2009. (AR 5). The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Cero's request for review. Cero commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g).

**A. Summary of Relevant Medical Evidence and Testimony**

At the hearing, Cero testified that although his Parkinson's disease was not diagnosed until December 2004, he had the condition prior to the date of his last insured. He stated that prior to September 30, 2002, he had multiple symptoms including urinary urgency, ankle stiffness, muscle pain and cramping, mild leg swelling, "emotional distress," and shortness of breath – all of which he attributed to Parkinson's disease. (AR 32). Cero further testified that in 2000 he had a sudden onset of inability to move his feet, difficulty walking, lack of stamina, and depression. *Id.*

In February 2001, an initial cardiology consultation concluded that Cero had atypical chest pain, normal left ventricular function, and no evidence of cardiac impairment. (AR 281). Throughout 2002, Cero attended nineteen different doctors' appointments. (AR 367). Notes from a March 6, 2002 pulmonary consultation with Dr. Glen Myers indicate that Cero complained of leg cramps, nasal congestion, lethargy and difficulty sleeping. (AR 144). He also had a history of urinary urgency. Dr. Meyers indicated that tests would be done to rule out sleep apnea. Further testing for sleep apnea established "minimal evidence of disordered breathing in sleep." (AR 156). The notes from an April 17, 2002 follow up appointment with Dr. Meyers indicate that Cero also suffered exertional chest pain. (AR 272).

In 2003, doctors diagnosed Cero with severe diverticulosis of the sigmoid colon. (AR 224-25). No further significant treatment for any condition in 2003 appears in the record. In January 2004, Cero reported that he became uncoordinated while folk dancing, and reported numbness and tingling in his right foot. (AR 167). He further reported intermittent episodes of dizziness, which are not truly vertigo,

and nocturnal leg cramps which appear to be responsive to quinine sulfate. (AR 170). An examination showed "very mild" decrease in right hand grip strength and no muscle atrophy. *Id.* There was decreased sensation in the legs around the ankle, and "decreased pinprick [sensation] on the thenar eminence of both hands." (AR170-71). Later nerve conduction studies showed "minimal amounts of sensory disturbance" in the extremities, but there was evidence of "L5 root irritation, probable mild radiculopathy." (AR 165). A lumbar MRI showed degenerative disc disease, with multiple disc bulges, but no nerve root impingement. (AR 175). In August 2004, Cero was evaluated for physical therapy and at that time reported, "left lateral toe paresthesia." (AR 173). His grip strength was reportedly normal. *Id.* Near the end of 2004, Cero was diagnosed with Parkinson's disease. Mot. (#11) at 3; (AR 32, 53, 289). In May 2005, Cero was reported to have moderate degenerative arthritis of the left knee. (AR 179). Physical therapy was recommended for the knee. Also in May 2005, Cero was diagnosed with hypertension. (AR 195).

**B. The Five Step Sequential Evaluation**

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)-(f). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). At step one, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). At step two, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id.* § 404.152(c). At step three, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment or combination of impairments meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id.* § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary

3

has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id*. § 404.1520(f).

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. *Tackett v. Apfel*, 180 F.3d 1094, 1098 and n.3 (9th Cir. 1999); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC"),[1] age, education, and work experience, a claimant can perform other work which is available in significant numbers. *Tackett*, 180 F.3d at 1098, 1100; 20 C.F.R. § 404.1520, § 416.920. If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id*. § 404.1520(a).

Here at step one, the ALJ found that Cero had not engaged in substantial gainful activity since his alleged onset of disability. (AR 32, 35). At steps two and three, the ALJ found that prior to his date of last insured, Cero had diverticulosis, obesity, and benign hypertrophy, which while severe did not meet or equal an impairment set forth in the Listing of Impairments. (AR 32-33). At step four the ALJ concluded that Cero retained the RFC to perform a full range of sedentary work. (AR 33-34). Taking into account Cero's RFC and the testimony of the vocational expert, the ALJ found that Cero was not prevented from performing any of his past relevant sedentary semi-skilled to skilled work. (AR 34). Since the ALJ's conclusion at this step was determinative, he did not proceed to step five.

**C. Standard of Review**

When deciding a Social Security appeal, the decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards.

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993); *Cooper,* 880 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).

4

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion when the entire record is considered. *Id.* (citation omitted). It "is more than a mere scintilla, but less than a preponderance . . . ." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003) (citation omitted). The Commissioner's "resolution of any conflicts in the evidence, if reasonable, must be affirmed. *See e.g., Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("we must uphold the [Commissioner's] decision where the evidence is susceptible to more than one rational interpretation"); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Where the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its own judgment for that of the Commissioner. *Batson*, 359 F.3d at 1196 (citation omitted). Thus, the question before the court is not whether the Commissioner reasonably could have reached a different outcome, but whether the Commissioner's final decision is supported by substantial evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

It is unequivocally the claimant's burden to demonstrate that he has a disabling mental or physical condition by providing "specific medical evidence" in support of the claim. 20 C.F.R. § 404.1514; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving she is disabled.")). Additionally, in DIB cases, the claimant must prove the existence of a disabling impairment while he is still insured. 42 U.S.C. § 423(c). Here, Cero maintains that findings of both Dr. Albert P. Michelbach and Dr. Charles Bernick establish that he was disabled due to Parkinson's disease prior to September 30, 2002. Mot. (#11) at 6. The ALJ rejected Dr. Michelbach's opinion as "pure patient advocacy," and he did not address Dr. Bernick's letter. Hence, Cero argues that the ALJ's findings are not supported by substantial evidence because he ignored material findings of both doctors. In addition, Cero maintains that the ALJ failed to fully develop the record because he did not request medical records from Dr. Michelbach or Dr. Bernick. Mot. (#11) at 7-8. Finally, he argues that the ALJ

disregarded or dismissed signs that the onset of Cero's Parkinson's disease began before September 30, 2002. Mot. (#11) at 8-9.

**D. The ALJ's Rejection of Medical Opinions Was Not in Error**

Cero argues that the ALJ's findings are not supported by substantial evidence because he ignored material findings of his treating physicians, Drs. Michelbach and Bernick. An ALJ may reject a treating physician's opinion only if he provides clear and convincing reasons that are supported by the record as a whole. *Magallanes*, 881 F.2d at 751; *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Batson*, 359 F.3d at 1195 (ALJ properly rejected opinions of treating physician that "lacked substantive medical findings to support her conclusion" and were "unsupported by the record as a whole"). It is the Commissioner's purview to make the determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e)(1). Accordingly, "A statement by a medical source that [a claimant] is 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [a claimant is] disabled." *Id.*

***1. Dr. Michelbach's Letter***

Dr. Michelbach was Cero's treating physician when Cero lived in Kansas. Although Cero moved to Las Vegas in February, 1999, he returned to Dr. Michelbach for his annual appointment in June 2000, which was the last time the doctor examined him. At Cero's request, Dr. Michelbach wrote a letter dated January 11, 2006, regarding Cero as his former patient. (AR 226-27). In his letter, Dr. Michelbach stated, "my response will have to be limited to findings found mostly on the last exam, which was June 30, 2000." (AR 226). After listing his "diagnoses at the time," Dr. Michelbach wrote, "At the time of the last exam, 06-30-2000, Mr. Cero was no longer able to perform physically demanding and highly stressful work he had formerly done. Due to these physical limitations he was performing telephone work out of his residence on a part time basis." *Id.* Dr. Michelbach continued to discuss some of Cero's symptoms, including "musculo-skeletal complaints going back as far as 1983,

essentially limited to both feet, until 1985 at which time he began complaining of pain in the form of neck spasm, and subsequent complaints of pain in the hips, and buttocks in 1995, and 1996." (AR 227). Dr. Michelbach reported that at the time the working diagnosis was arthritis, but because of the cramping he started Cero on Quinine Sulfate. *Id.* Other tests followed to assess the cramping and other symptoms in 1997 and 1998.  The letter indicates that at the June 2000 examination, Cero "was complaining of increased pain in his feet, symptoms related to urinary stream, and depression, which had caused him to stop working all together." *Id.* Dr. Michelbach then closed the letter with his opinion that, "[b]ased on these symptoms, Mr. Cero's inability to continue to do even part-time work and the diagnosis of Parkinsons by Dr. Bernick in 2004, it is medically probable that these symptoms were progressive and fully debilitating within a year or two of his last examination." *Id.*

In his decision, the ALJ addressed the letter from Dr. Michelbach, stating, "It should be mentioned that the claimant's treating physician submitted a very speculative report in January 2006, implying that the claimant by June 30, 2000, was unable to perform the 'physically demanding and highly stressful work he had formerly done,' based upon a 'medical probability' that the Parkinson's had been present in 2000." (AR 34). The ALJ then stated, "I completely reject this vague and ambiguous assessment, [], and dismiss it as nothing more than pure patient advocacy.  There is absolutely no objective medical evidence existing before September 30, 2002, of a disabling condition of any kind, and no evidence, whatsoever, that it was Parkinson's disease that had caused the claimant's symptoms as they were reported prior to that date." *Id.*

The ALJ did not commit error by rejecting Dr. Michelbach's letter.  Rather he provided clear and convincing reasons, supported by the record as a whole, to reject the doctor's opinion. Specifically, the ALJ found Dr. Michelbach's letter to be unsubstantiated by any objective medical evidence in the record.  The record as a whole supports the ALJ's reasoning.  As he put it, there is no objective medical evidence existing before September 30, 2002, that indicates disabling condition, nor any evidence that Cero suffered Parkinson's disease at that time.  While Dr. Michelbach stated that Cero could not perform "physically demanding and highly stressful work he had formerly done," the doctor fails to

7

indicate what in the record supports such an opinion or even what he believes Cero's former work to have been. Similarly vague and ambiguous, is the doctor's assertion of an unspecified medical probability that Cero's symptoms were "fully debilitating within a year or two of his last examination." The ALJ was not required to accept such a "brief, [and] conclusory" opinion that is "inadequately supported by clinical findings." *Matney*, 981 F.2d at 1019. The ALJ did not commit error by rejecting Dr. Michelbach's letter.

### *2. Dr. Bernick's Letter*

Also in the record before the ALJ was a letter from Dr. Charles Bernick dated May 20, 2006. Dr. Bernick is Cero's neurologist and is also the doctor who diagnosed Cero's Parkinson's disease in 2004. Dr. Bernick wrote that he'd seen Cero for a neurological evaluation and follow-ups since October 2004. (AR 288). According to Dr. Bernick, Cero "presented with a 3 year history of symptoms such as difficulty with initiating movement, walking, balance, dexterity, recurrent muscle pain and reduced stamina." *Id.* He then opined, "[t]hese deficits are all consistent with the onset of Parkinson's Disease, which is what I feel Mr. Cero has." *Id.* Dr. Bernick stated that he thought it was "medically probable that Mr. Cero was disabled from his customary occupation from at least 2002 onward." *Id.* He based that opinion on "medical records and the opinion of his treating physician, Dr. Michelbach, along with the effects of Parkinson's Disease, which clearly began at least 2-3 years ago." *Id.*

The Commissioner concedes that the ALJ did not address Dr. Bernick's letter in his opinion, but argues that any error attributable to the ALJ on that basis is harmless. Opp'n (#16) at 10. The court agrees. The ALJ had before him the treatment notes of Dr. Bernick (AR 305-388; 289-90), which indicate that Cero was diagnosed with Parkinson's disease in 2004. (AR 289-90). The only portion of Dr. Benick's letter (AR 288) that tends to support Cero's contention that he was disabled prior to September 30, 2002, is the doctor's statement that he thinks it is medically probable that Cero was disabled from his customary occupation since 2002. Notably, that opinion is based in part on the discredited opinion of Dr. Michelbach. Moreover, like Dr. Michelbach, Dr. Bernick fails to indicate what he believed Cero's occupation to be, nor does he point to a single item of objective medical

evidence to support his opinion that Cero would be unable to perform that job.  As explained, *supra*, such conclusory, brief, and clinically unsupported statements by a treating physician need not be credited by the ALJ.  *See Matney,* 981 F.2d at 1019.  Nor will a mere "statement by a medical source that [a claimant] is 'disabled' or 'unable to work'" lead to a determination of disability. *See* 20 C.F.R. § 404.1527(e)(1).  Finally, Dr. Bernick's letter indicates that the effects of Cero's Parkinson's disease "clearly began at least 2-3 years ago," *i.e.*, in 2003-2004, which only supports the ALJ's finding that Cero was not disabled before September 30, 2002.  Hence, even accepting the opinions in the letter as valid, they do not provide clear support for Cero's contention that the effects of Parkinson's disease precluded him from working prior to September 30, 2002.  Accordingly, even if the ALJ erred in not addressing this single letter of Dr. Bernick, such error was harmless and does not negate the validity of the ALJ's ultimate conclusion that Cero was not disabled prior to September 30, 2002.  *Batson*, 359 F.3d at 1197.

**E. The ALJ Satisfied His Duty to Develop the Record**

Contrary to Cero's contention, the ALJ properly satisfied his duty to fully and fairly develop the record.  It is well established that an ALJ has a "special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir 2001)); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir 1983). When a claimant is unrepresented, "the ALJ must be especially diligent in exploring for all the relevant facts." *Tonapetyan*, 242 F.3d at 1150.  However, because the claimant bears the burden of proving disability, the ALJ's duty to further develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60 (citing *Tonapetyan*, 242 F.3d at 1150); *see also Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir 1996) (ALJ erred by rejecting physician's opinion for lack of foundation instead of further developing the record to properly evaluate the opinion). The ALJ may "discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the

hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

Cero argues that the ALJ did not fully develop the record because he didn't request medical records from Drs. Michelbach and Bernick in support of their letters. Dr. Bernick's treatment notes are in the record and were considered by the ALJ. (AR 305-388; 289-90). The diagnosis notes referred to by Dr. Michelbach in his letter are also in the record. (AR 228-30). It is not clear, then, what other records the ALJ might have requested. In any event, an ALJ is required to recontact a medical source only where the record is "inadequate for [him] to determine whether [the claimant] is disabled." 20 C.F.R. § 404.1512(e).

Here the ALJ had before him the records of Drs. Bernick and Michelbach, as well as several other reports, which together provided an adequate basis to reasonably determine whether or not Cero was disabled within the meaning of the Act prior to September 30, 2002. The main impairment on which Cero relies to establish disability is Parkinson's disease. The record indicates, however, that Dr. Bernick diagnosed Cero with Parkinson's disease in 2004. (AR 32, 53). In a December 9, 2004 "summary report," Dr. Bernick stated that "Mr. Cero is felt to have Parkinson's disease," (AR 289), and that he "explained to Mr. Cero that Parkinson's disease is a progressive disorder, but it is impossible to state with any accuracy what the rate of progression would be." (AR 290). Dr. Michelbach's diagnosis report, though predating 2002, is void of any mention of Parkinson's disease. (AR 229-30), nor is there any other mention of Parkinson's disease prior to 2004. There is simply no indication that the record is ambiguous regarding the timing of Cero's Parkinson's disease diagnosis or any other medical issue, such that the ALJ should have sought further information.

Additionally, it should be noted that Cero was represented by counsel at the hearing, and counsel represented that the record was complete. Specifically, at the start of the hearing, the ALJ announced what exhibits were in the file and that he had elected to add to the exhibit file "some other third party letters which have been stuck elsewhere in the file but weren't exhibits and I thought they were pertinent so I put them in as Exhibits at 7E and 8E." (AR 40). After admitting the exhibits on the record, the ALJ asked, "Do we need to leave the record open?" to which counsel for Cero replied, "No,

sir." (AR 40-41). The ALJ did not fail in his duty to fully develop the record.

**F. The ALJ's Credibility Determination Was Not in Error**

Cero next argues that the ALJ improperly discredited evidence of major medical treatment tending to support his contention that he had the early symptoms of Parkinson's disease prior to September 30, 2002. Mot. (#11) at 8-9. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. To determine whether a claimant's testimony regarding subjective symptoms is credible, an ALJ must engage in a two step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). It is not necessary that a claimant show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Here the ALJ found that Cero could not meet this first hurdle. He stated, "[t]he claimant's attempt to build a case for disability prior to his date last insured is neither supported by the evidence, nor by his own complaints, as they existed before September 30, 2002." (AR 34). The ALJ first noted that Cero "pursued minimal treatment before September 30, 2002, far less than would be expected if his condition had truly been disabling." *Id*. "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Additionally, the ALJ noted that prior to September 30, 2002, Cero's complaints "included such things as an inability to sleep, leg cramps, and possible sleep apnea, later shown not to exist," and though diagnosed with diverticulosis in 2003, "his physician appeared to attach little significance" to the diagnosis. *Id*. Finally, "It was not until 2004, and later, that the Parkinson's disease and other more serious diagnoses appeared in the medical record." *Id*. Cero's main complaint is that the ALJ erred in dismissing the nineteen visits for treatment in 2002 as "minimal treatment." Mot. (#11) at 8; *see* (AR 367). It is not

11

the role of this court to decide whether it could reasonably find nineteen visits to be more than minimal; this court's role is to determine whether the ALJ's conclusion is reasonable and supported by substantial evidence in the record. *Magallanes*, 881 F.2d at 750; *see Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). The court finds that it is.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that plaintiff's Motion for Reversal And/Or Remand (#11) be denied and that the defendant's Cross-Motion to Affirm (#16) be granted.

DATED this 1st day of November, 2010.

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**